12

Raymond L. Sandelman (SBN 078020)
Attorney at Law
196 Cohasset Road, Suite 225
Chico, CA 95926-2284
(530) 343-5090/ (530) 343-5091 (Fax)
Email: Raymond@sandelmanlaw.com

Thomas G. Mouzes (SBN 099446)
Mark Gorton (SBN 099312)
BOUTIN JONES INC.
555 Capitol Mall, Suite 1500
Sacramento, CA 95814
Telephone:     (916) 321-4444
Facsimile:     (916) 441-7597
Email: tmouzes@boutinjones.com
         mgorton@boutinjones.com

Attorneys for Plaintiffs
Esplanade Enterprises, Inc. and Joseph Miceli

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>STEVEN J. HORNE,<br><br>             Debtor.<br>_____<br>ESPLANADE ENTERPRISES INC., and<br>JOSEPH MICELI,<br><br>             Plaintiffs,<br><br>v.<br><br>STEVEN J. HORNE,<br><br>             Defendant.<br>_____ | Case No. 14-30124-B-7<br><br>Chapter 7<br><br><br>Adv. Proc. No.  15-02002<br><br><br>Date:  1/21/2016<br>Time: 9:30 a.m.<br>Judge: Hon. Christopher D. Jaime<br>Place: U.S. Bankruptcy Court<br>      501 I Street, Department B, 6th Floor<br>      Sacramento, CA |

## PLAINTIFFS' TRIAL BRIEF

1

The Joint Pretrial Statement of Undisputed Facts includes the following:

**(a) The Corporation**

Esplanade Enterprises, Inc. is a California corporation formed in 2004. Under its fictitious business name of Merit Medi-Trans it operates vans that transport patients on a non-emergency basis. At the time of Steven J. Horne's bankruptcy, Mr. Horn and Mr. Miceli each owned 50% of the stock of the corporation. Mr. Miceli is the chief executive officer. Mr. Horne was the Vice President and Secretary of Esplanade Enterprises, Inc. from April 9, 2004 to April 12, 2013.

**(b) Disbursements to or on behalf of Mr. Horne**

(i) Mr. Horne made disbursements with Esplanade Enterprises, Inc. monies (Category 9(a)[1] articulated in the Complaint) in the sum of $32,223.

(ii) Mr. Horne made disbursements with Esplanade Enterprises, Inc. monies (Category 9(b)[2] articulated in the Complaint) in the sum of $34,900.

(iii) Mr. Horne made disbursements with Esplanade Enterprises, Inc. monies (Category 9(c)[3] articulated in the Complaint) in the sum of $41,000.

(iv) Mr. Horne made disbursements with Esplanade Enterprises, Inc. monies (Category 9(d)[4] articulated in the Complaint) in the sum of $12,092.05.

(v) Mr. Horne made disbursements with Esplanade Enterprises, Inc. monies (Category 9(e)[5] articulated in the Complaint) in the sum of $154,525.

(vi) Mr. Horne made disbursements with Esplanade Enterprises, Inc. monies (Category

---

[1] The Complaint alleges at Paragraph 9(a) that Mr. Horne misappropriated monies in Esplanade Enterprises, Inc.'s Tri-Counties Bank, account #06652**** by signing checks payable to himself.

[2] The Complaint alleges at Paragraph 9(b) that Mr. Horne misappropriated monies in Esplanade Enterprises, Inc.'s Steven J. Horne paid himself the following monies from Esplanade Enterprises, Inc.'s Rabobank bank account 070001****.

[3] The Complaint alleges at Paragraph 9(c) that Mr. Horne is the vice president and shareholder of Top Quality Water, LLC doing business as Pure Water Technology of North Valley. Mr. Horne paid his business Top Quality Water, LLC the following monies from Esplanade Enterprises, Inc.'s Rabobank bank account 070001**** without authorization from Esplanade Enterprises, Inc.'s Board of Directors or any corporate officer.

[4] The Complaint alleges at Paragraph 9(d) that Steven J. Horne paid his personal creditors monies from Esplanade Enterprises, Inc.'s Tri-Counties Bank, account #06652**** without authorization from Esplanade Enterprises, Inc.'s Board of Directors or any corporate officer.

[5] The Complaint alleges at Paragraph 9(e) that Steven J. Horne paid his personal creditors the monies from Esplanade Enterprises, Inc.'s Rabobank, account 070001**** without authorization from Esplanade Enterprises, Inc.'s Board of Directors or any corporate officer.

2

RAYMOND L. SANDELMAN
ATTORNEY AT LAW
196 COHASSET ROAD, SUITE 225, CHICO, CA 95926-2284
(530) 343-5090 / (530) 343-5091 (FAX)

9(f)[6] articulated in the Complaint) in the sum of $8,100.00.

(vii) Mr. Horne made disbursements with Esplanade Enterprises, Inc. monies (Category 9(g)[7] articulated in the Complaint) in the sum of $1,500.00.

**(c) Nonpayment of taxes**

Esplanade Enterprises, Inc. withheld monies from its employee's paychecks and failed to turn over the monies to the United States Treasury (IRS) on December 31, 2012. Esplanade Enterprises, Inc. also failed to pay the share of employment taxes and failed to file correct informational returns. The taxes owed for the period entry December 31, 2012 was $1,269.989.

**(d) No loan documents**

There are no documents memorializing any loans made by Mr. Horne to Esplanade Enterprises, Inc. other than the following:

8/18/04 $10,000 Promissory Note

8/20/04 $10,000 Promissory Note

10/13/04 $10,000 Promissory Note

11/12/04 $8,500 Promissory Note

9/25/04 $14,000 Promissory Note

7/28/06 $10,000 Promissory Note

Mr. Horne did not keep any records of loans he made to Esplanade Enterprises, Inc. There are no documents memorializing any loans made by Linda Horne to Esplanade Enterprises, Inc.

**(e) The loan account**

Mr. Horne told bookkeeper Vicki Perryman to create an account to book as loans money he was drawing in excess of his $30,000 yearly salary.

/ / /

---

[6] The Complaint alleges at Paragraph 9(e) that Steven J. Horne paid his personal creditors the monies from Esplanade Enterprises, Inc.'s Rabobank, account 070001**** without authorization from Esplanade Enterprises, Inc.'s Board of Directors or any corporate officer.

[7] The Complaint alleges at Paragraph 9(e) that Steven J. Horne paid his personal creditors the monies from Esplanade Enterprises, Inc.'s Rabobank, account 070001**** without authorization from Esplanade Enterprises, Inc.'s Board of Directors or any corporate officer.

RAYMOND L. SANDELMAN
ATTORNEY AT LAW
196 COHASSET ROAD, SUITE 225, CHICO, CA 95926-2284
(530) 343-5090 / (530) 343-5091 (FAX)

3

PLAINTIFFS' TRIAL BRIEF

**(f) Credit cards**

Mr. Horne used Esplanade Enterprises, Inc.'s funds to pay credit card charges he made on a Capital One credit card issued to Mr. Horne.

**(g) Automobiles**

Esplanade Enterprises, Inc. paid Chico Nissan Hyundai $13,101 for the purchase of a 2009 Chrysler 300 automobile. Mr. Horne had title to the automobile put into his name. Mr. Horne has had possession of the 2009 Chrysler 300 automobile since he stopped working for Esplanade Enterprises, Inc. A written demand was made on Mr. Horne on July 9, 2013 to transfer took title and possession to the 2009 Chrysler 300 automobile to Esplanade Enterprises, Inc. In 2013 while he was employed by Esplanade Enterprises, Inc., Mr. Horne took possession of a 1998 Ford Expedition automobile. Title to the Ford Expedition automobile was titled in the name of Mr. Horne dba Merit Medi-Trans. Mr. Horne has had possession of the 1998 Ford Expedition since he stopped working for Esplanade Enterprises, Inc. A written demand was made on Mr. Horne on July 9, 2013 to transfer title and possession to the 1998 Ford Expedition automobile to Esplanade Enterprises, Inc.

## 2. Plaintiffs' Claims

(a) False Representations

When Esplanade Enterprises, Inc. encountered financial problems in 2006, both Mr. Horne and Joseph Miceli reduced their salaries from $60,000 to $30,000 a year beginning in 2007. In an effort to cut operational costs even more, Mr. Miceli took a job outside Esplanade Enterprises, Inc. with the understanding that Mr. Horne would continue in a paid position and would be on site to operate the business. Beginning in March of 2008, Mr. Miceli relied on Mr. Horne to manage the affairs of Esplanade Enterprises, Inc. Mr. Miceli had regular meetings and telephone conversations with Mr. Horne concerning the financial affairs of Esplanade Enterprises, Inc. During these meetings and telephone conversations Mr. Miceli would ask Mr. Horne if all of the accounts payable (bills) of Esplanade Enterprises, Inc. were timely being paid. On numerous occasions from March of 2008 through December of 2012, Mr. Horne advised Mr. Miceli that all of the bills of accounts payable (bills) of Esplanade Enterprises, Inc. were timely being paid, and

PLAINTIFFS' TRIAL BRIEF

RAYMOND L. SANDELMAN
ATTORNEY AT LAW
196 COHASSET ROAD, SUITE 225, CHICO, CA 95926-2284
(530) 343-5090 / (530) 343-5091 (FAX)

that there were no financial issues facing Esplanade Enterprises, Inc. that Mr. Miceli should be concerned about. The representations were made in the City of Chico both in person and over the telephone, at least quarterly from March of 2008 through December of 2012.

On January 31, 2013, Mr. Miceli met with Mr. Horne at Panda Express. During this meeting Mr. Horne handed Mr. Miceli a folder and stated that he had betrayed Mr. Miceli's trust. The folder contained a printout from the company's Quick Book software program titled "Esplanade Enterprises Inc., Account QuickReport, All Transactions," dated January 31, 2013. Mr. Horne told Mr. Miceli that he (Mr. Horne) used Esplanade Enterprises, Inc. money to cover his personal expenditures. Mr. Horne explained that he did not realize how much he took, and that the situation got out of control.

Esplanade Enterprises, Inc. withheld monies from employee's paychecks. but the withheld monies were not paid to the United States Treasury or the Franchise Tax Board. The Joint Pretrial Statement of Undisputed Facts specifies that the taxes, including penalties, owed for the period entry December 31, 2012 was $1,269.989. Mr. Miceli relied upon Mr. Horne's statements and his concealment of the tax obligations, by allowing him to continue to manage the financial affairs of Esplanade Enterprises, Inc. Mr. Horne was acting in his capacity as an officer and director of Esplanade Enterprises, Inc. If Mr. Miceli had found out about the unpaid tax obligations, Mr. Miceli would have asked for a thorough financial review of Esplanade Enterprises, Inc. Mr. Miceli would have made efforts to sell Esplanade Enterprises, Inc.'s assets, or to restructure its business by decreasing Mr. Horne's salary, eliminating some staff positions, terminating inefficient business pursuits, better managing cash flow, promoting profitable business pursuits, and better scheduling drivers.

(b) Misappropriated Corporate Funds.

Above and beyond the repayment of debt owed to Mr. Horne and Mr. Horne's salary, Mr. Horne paid himself $145,470. After a demand for repayment of the misappropriated funds was made, Mr. Horne attempted to unilaterally characterize in the accounting records some of the disbursements to himself as loans. Mr. Miceli have maintained through counsel that any loans from Esplanade Enterprises, Inc. to Mr. Horne would be illegal. The loans were not approved by

RAYMOND L. SANDELMAN
ATTORNEY AT LAW
196 COHASSET ROAD, SUITE 225, CHICO, CA 95926-2284
(530) 343-5090 / (530) 343-5091 (FAX)

5

a majority of the shareholders entitled to act when shares owned by any officer or director receiving a loan eligible to participate in the transaction or plan are not counted, and breaches of Mr. Horne's fiduciary duty to the corporation and its shareholders.   Mr. Horne knew that Esplanade Enterprises, Inc. was insolvent because he was in charge of the books.  He knew that he had no ability to repay the monies he had paid himself.

Mr. Horne also misappropriated cash in the sum of $62,709

(c) Conversion of vehicles

Mr. Horne converted the 2009 Chrysler 300 automobile; the market value of the automobile at the termination of Mr. Horne's employment was approximately $13,101.   Mr. Horne converted the 1998 Ford Expedition; the market value of the automobile at the termination of Mr. Horne's employment was approximately $1,700.

### 3. Legal Analysis

#### (a) Embezzlement and Larceny Are Non-Dischargeable Debts

4)   [22:640]   **"Embezzlement":**   "Embezzlement" is the fraudulent appropriation of property by one to whom it is entrusted or into whose hands it has lawfully come. [*Moore v. United States* (1895) 160 US 268, 269-270, 16 S.Ct. 294, 295; *In re Littleton* (9th Cir. 1991) 942 F2d 551, 555]

Embezzlement under § 523(a)(4) requires a showing of:

- — property rightfully in the possession of a nonowner;
- — nonowner's appropriation of the property to a use other than which it was entrusted; and
- — circumstances indicating fraud. [*In re Littleton*, supra, 942 F2d at 555; In re Wada (9th Cir. BAP 1997) 210 BR 572, 576]

(a)   [22:641]   **Fraudulent intent/circumstances indicating fraud:** Embezzlement requires a fraudulent intent to deprive, which may be inferred from the debtor's conduct and the underlying circumstances. [Savonarola v. Beran (BC ND FL 1987) 79 BR 493, 496]

• [22:642] Fraudulent intent existed where Debtor/travel agent told Client she was unable to return $84,000 of Client's funds because the funds were used to make nonrefundable travel deposits but later admitted the deposits were never made. [In re Wada, supra, 210 BR at 577]

• [22:643] Fraudulent intent may be found where a debtor sells mortgaged property and fails to remit the proceeds to the secured creditor or consignor. [*In re Blanton* (BC ED VA 1992) 149 BR 393, 394-395—debtor's sale of consigned automobiles and misappropriation of proceeds indicated fraudulent intent]

[22:644 - 22:648] Reserved.

(b)   [22:649]   **Fiduciary capacity not required:** A debt can be nondischargeable for embezzlement under § 523(a)(4) without the existence of a

RAYMOND L. SANDELMAN
ATTORNEY AT LAW
196 COHASSET ROAD, SUITE 225, CHICO, CA 95926-2284
(530) 343-5090 / (530) 343-5091 (FAX)

PLAINTIFFS' TRIAL BRIEF

fiduciary relationship. [*In re Littleton*, supra, 942 F2d at 555; *In re Wada*, supra, 210 BR at 576]

5) "Larceny"

(a) [22:650] **Federal common law definition:** For purposes of § 523(a)(4), the bankruptcy court is not bound by the concept of larceny as defined by state law; it may follow the federal common law, which defines larceny as a "felonious taking of another's personal property with the intent to convert it or deprive the owner of same." [*Matter of Ormsby* (9th Cir. 2010) 591 F3d 1199, 1205 (internal quotes omitted)]

1) [22:650.1] **"Felonious" defined:** "Felonious" means "proceeding from an evil heart or purpose; malicious; villainous ... Wrongful; (of an act) done without excuse of color of right." [*Matter of Ormsby*, supra, 591 F3d 1205, fn. 4 (internal quotes omitted)]

2) [22:650.2] **Embezzlement distinguished:** Larceny is distinguished from embezzlement in that the original taking of the property was unlawful; i.e., with embezzlement, the nonowner rightfully had possession of the property before he or she misappropriated it, whereas one who commits larceny never had lawful possession. [*In re Montes* (BC CD CA 1994) 177 BR 325, 331]

(b) [22:651] **Fraudulent intent required?** It is unclear whether a finding of fraudulent intent is required to render a debt obtained by larceny nondischargeable under § 523(a)(4). [See *Matter of Ormsby*, supra, 591 F3d at 1206 (declining to decide issue because underlying state court judgment provided sufficient evidence of debtor's fraudulent intent)]

March, Ahart and Shapiro, California Practice Guide: Bankruptcy (The Rutter Group 2015)

**(b) Willful and Malicious Conversion Is A Non-Dischargeable Debt**

(1) [22:695] **Conversion:** A debt based on **conversion** by the debtor may be nondischargeable under § 523(a)(6). [*In re Bailey* (9th Cir. 1999) 197 F3d 997, 1000]

The elements of **conversion** under California law are:

- — the creditor's ownership or right to possession of the property at the time of **conversion**;
- — the debtor's **conversion** by a wrongful act or disposition of property rights; and
- — damages. [*In re Thiara* (9th Cir. BAP 2002) 285 BR 420, 427]

(a) [22:696] **"Willful and malicious injury" required:** Even where **conversion** has been proven under California law, the court must also find that the injury was both willful and malicious (¶22:670 ff.). [*In re Thiara*, supra, 285 BR at 429—**conversion** under California law "does not necessarily decide the type of wrongful intent on the part of the debtor that is necessary for the damages to be a nondischargeable debt under § 523(a)(6)" (internal quotes and citations omitted)]

Stated otherwise, "a failure to prove **conversion** is fatal to an argument that defendant's conduct caused 'willful and malicious injury.' It does not mean the converse—that proof of **conversion** necessarily establishes such injury." [*In re Peklar* (9th Cir. 2001) 260 F3d 1035, 1038]

RAYMOND L. SANDELMAN
ATTORNEY AT LAW
196 COHASSET ROAD, SUITE 225, CHICO, CA 95926-2284
(530) 343-5090 / (530) 343-5091 (FAX)

7

March, Ahart and Shapiro, California Practice Guide: Bankruptcy (The Rutter Group 2015)

### (c) Fraud Is A Non-Dischargeable Debt

15.    **[22:450] Debts Incurred Through False Pretenses, False Representation or Actual Fraud (11 USC § 523(a)(2)(A)):** A debt or extension or renewal of credit is nondischargeable to the extent obtained by "false pretenses, a false representation, or actual **fraud**" (other than a fraudulent financial statement, below). [11 USC § 523(a)(2)(A)]

*Compare—debts obtained through false financial statement:* Debts obtained through the use of a written false financial statement are nondischargeable under §523(a)(2)(B), *discussed at ¶22:545 ff.*

a.  **[22:451] Adversary proceeding required:** The debt is not automatically nondischargeable. A creditor seeking to have a debt declared nondischargeable under § 523(a)(2)(A) must file a timely dischargeability complaint with the bankruptcy court (usually not later than 60 days after the first date set for the § 341(a) creditors' meeting, *¶22:1665 ff.*).

b.  **[22:452] Required showing:** To except a debt from discharge under §523(a)(2)(A), the creditor must show:

- — the debtor made representations that at the time the debtor knew to be false;
- — the debtor made those representations *with the intention and purpose* of deceiving the creditor (scienter);
- — the creditor *justifiably relied* on those representations; and
- — the creditor *sustained losses* as a proximate result of the debtor's representations. [*In re Mbunda* (9th Cir. BAP 2012) 484 BR 344, 350; *In re Sabban* (9th Cir. 2010) 600 F3d 1219, 1222; *In re Eashai* (9th Cir. 1996) 87 F3d 1082, 1086]

Whether a requisite element of a claim under § 523(a)(2) has been satisfied is a factual determination. [*In re Ungar* (8th Cir. 2011) 633 F3d 675, 679]

(1)  **[22:452.1] False representations:** A party seeking to except a debt from discharge under § 523(a)(2)(A) must show that the debtor knowingly made false representations (above).

(a)  **[22:452.2] Statements respecting debtor's/insider's financial condition** *excluded:* Statements (even if false) made by the debtor regarding the debtor's or an insider's financial condition are excluded from the purview of § 523(a)(2)(A). [See 11 USC § 523(a)(2)(A)—false pretenses, false representations or actual **fraud** "*other than* a statement respecting the debtor's or an insider's financial condition" are covered by the statute (emphasis added); see also *In re Belice* (9th Cir. BAP 2011) 461 BR 564, 573—"In short, oral misrepresentations regarding financial condition are dischargeable"]

But because the Code does not define the phrase "respecting the debtor's … financial condition," courts disagree how broadly the phrase should be interpreted:

1)  **[22:452.3] "Broad" interpretation:** Courts adopting a broad interpretation of the phrase have concluded that the phrase includes any statement that has a bearing on the financial position of the debtor or an insider, including any statement regarding

RAYMOND L. SANDELMAN
ATTORNEY AT LAW
196 COHASSET ROAD, SUITE 225, CHICO, CA 95926-2284
(530) 343-5090 / (530) 343-5091 (FAX)

8

the status of a single asset or liability. [*In re Belice*, supra, 461 BR at 574 (collecting cases)]

2) [22:452.4] **"Narrow" view:** Other courts (including courts in the Ninth Circuit) have concluded the phrase includes "only statements providing information as to a debtor's net worth, overall financial health, or an equation of assets and liabilities." [*In re Belice*, supra, 461 BR at 574 (internal quotes omitted)]

• [22:452.5] Chapter 7 Debtor's alleged misrepresentations concerning Debtor's (i) $30,000 monthly salary as an attorney; (ii) $100,000 profit from the sale of his residence; (iii) $7,000 monthly rent payment; (iv) status as a professional football team's season ticket holder; (v) purchase of a $28,000 diamond engagement ring; and (vi) security provided for creditor's loan, did *not* qualify as "statements respecting the debtor's financial condition" for nondischargeability purposes. While several of the statements related to Debtor's historical income and expenses, they were not akin to any sort of complete or comprehensive statement of income and expenses; and statements relating to some of Debtor's assets did not reveal anything meaningful or comprehensive about Debtor's overall net worth, because they indicated nothing about Debtor's liabilities or any liens against any of his property. [*In re Belice*, supra, 461 BR at 579]

(2) [22:453] **Money, property, services or credit obtained by debtor:** The debtor must have obtained money, property, services or the extension, renewal or refinancing of credit as a result of the fraudulent conduct. [11 USC § 523(a)(2)(A)]

(a) [22:454] **"Property":** "Property" for this purpose is construed broadly:

• [22:455] *Obtaining a guarantee* or an agreement to cosign a note is obtaining "property" within the meaning of § 523(a)(2)(A). [See *Matter of Everman* (BC MD FL 1987) 72 BR 687, 690]

• [22:456] Limited Partners' interests acquired by general partners through fraudulent misrepresentations regarding partnership assets constituted "property" within the meaning of § 523(a)(2)(A). [*In re Lauer* (8th Cir. 2004) 371 F3d 406, 413]

[22:457 - 22:459] *Reserved.*

(b) [22:460] **Benefit received by debtor not required:** On the other hand, most courts hold a creditor seeking a § 523(a)(2)(A) nondischargeability determination need *not* show the debtor obtained some direct or indirect benefit from the debtor's fraudulent conduct. [*Muegler v. Bening* (9th Cir. 2005) 413 F3d 980, 983-984, cert.den. (2006) 546 US 1139, 126 S.Ct. 1149; *In re Zaffron* (BC ED NY 2004) 303 BR 563, 569-570; *Matter of M.M. Winkler & Assocs.* (5th Cir. 2001) 239 F3d 746, 749—"The language of the statute includes no 'receipt of benefit' requirement. The statute focuses on the character of the debt, not the culpability of the debtor or whether the debtor benefited from the **fraud**"]

[22:461 - 22:464] *Reserved.*

(3) [22:465] **Debtor's fraudulent intent (scienter):** "(E)ither actual knowledge of the falsity of a statement, or reckless disregard for its truth, satisfies the scienter requirement for nondischargeability of a debt." [*In re Grabau* (ND CA 1993) 151 BR 227, 234 (internal quotes omitted); *In re Kong* (9th Cir. BAP 1999) 239 BR 815, 826]

The court's determination that the debtor committed actual **fraud** need not be supported by a specific finding of moral turpitude. [*In re Kennedy* (9th Cir. 1997) 108 F3d 1015, 1018]

9

RAYMOND L. SANDELMAN
ATTORNEY AT LAW
196 COHASSET ROAD, SUITE 225, CHICO, CA 95926-2284
(530) 343-5090 / (530) 343-5091 (FAX)

(a) [22:466] **Subjective test:** For purposes of § 523(a)(2)(A), scienter must be measured by the debtor's *subjective* intent *at the time of the transaction* in which the debtor obtained the money, property or services. Subsequent acts of **fraud** or omission do not establish that the debtor had the requisite intent at the time to make any fraudulent representations. [*In re Philopulos* (BC ND IL 2004) 313 BR 271, 282]

(b) [22:467] **May be inferred:** Intent to defraud is a question of fact. Since fraudulent intent rarely can be proven directly, it may be inferred from the surrounding circumstances. [*In re Kennedy*, supra, 108 F3d at 1018]

(c) [22:468] **Imputed intent?** Courts disagree about what circumstances are required to impute fraudulent intent to the debtor under § 523(a)(2). [See *In re Huh* (9th Cir. BAP 2014) 506 BR 257, 265-266 (discussing three lines of authority from other jurisdictions); see also Ponoroff, "Vicarious Thrills: The Case for Application of Agency Rules in Bankruptcy Dischargeability Litigation" (June 1996) 70 Tul. L.Rev. 2515]

1) [22:469] **"Knew or should have known" (*Walker*) standard:** In the Ninth Circuit, "more than the mere existence of an agent-principal relationship is required to charge the agent's **fraud** to the principal. However, ... actual participation in the **fraud** by the principal is not always required. If the principal either *knew or should have known* of the agent's **fraud**, the agent's **fraud** will be imputed to the debtor-principal. When the principal is recklessly indifferent to his agent's acts, it can be inferred that the principal should have known of the **fraud**." [*Matter of Walker* (8th Cir. 1984) 726 F2d 452, 454 (emphasis added); see also *In re Huh*, supra, 506 BR at 266—"we explicitly adopt the 'knew or should have known' standard from *Walker* ... as most legally and logically appropriate and most consistent with our prior published precedents and the direction of Supreme Court and Ninth Circuit decisions"]. . .

(4) [22:480] **Creditor's "justifiable" reliance:** A creditor claiming nondischargeability under § 523(a)(2)(A) must also show it was justified in relying on the debtor's fraudulent conduct in obtaining the money, property or services. [*Field v. Mans* (1995) 516 US 59, 73-76, 116 S.Ct. 437, 444-446—reliance need not reach level of "reasonableness" to establish nondischargeability under § 523(a)(2)(A) but must still be justifiable; *In re Eashai* (9th Cir. 1996) 87 F3d 1082, 1090; *In re Ortenzo Hayes* (BC CD CA 2004) 315 BR 579, 588—creditors could not justifiably rely on oral misrepresentation made in context of sale negotiation, where provision was not incorporated into purchase agreement]

Justifiable reliance is an intermediate standard between actual reliance and reasonable reliance. [*In re Schnuelle* (8th Cir. BAP 2011) 441 BR 616, 622]

*Compare: Reasonable* reliance must be shown in connection with a debt incurred using a false written financial statement. *See discussion at ¶22:580 ff.*

(a) [22:481] **Justifiable reliance despite creditor's negligent *failure to investigate:*** A person may justifiably rely on a representation "even if the falsity of the representation could have been ascertained upon investigation. In other words, negligence in failing to discover an intentional misrepresentation" does not defeat justifiable reliance. [*In re Eashai*, supra, 87 F3d at 1090; *In re Medley* (9th Cir. BAP 1997) 214 BR 607, 613—"the standard does protect the ignorant, the gullible, and the dimwitted"; *In re Apte* (9th Cir. BAP 1995) 180 BR 223, 229—"justifiable" reliance is a mixture of objective and subjective standards, which takes into account knowledge and relationship of the parties themselves]

PLAINTIFFS' TRIAL BRIEF

RAYMOND L. SANDELMAN
ATTORNEY AT LAW
196 COHASSET ROAD, SUITE 225, CHICO, CA 95926-2284
(530) 343-5090 / (530) 343-5091 (FAX)

However, a person cannot justifiably rely on a representation if he or she knows it is false or its falsity is obvious: "(A) person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth." [*In re Kirsh* (9th Cir. 1992) 973 F2d 1454, 1459 (internal quotes omitted)]

March, Ahart and Shapiro, California Practice Guide: Bankruptcy (The Rutter Group 2015)

### 4. Relief Requested

Esplanade Enterprises, Inc. seeks the following damages:

Non-authorized payments to Mr. Horne: $145,470.

Misappropriated cash: $62,709

Converted 2009 Chrysler 300 automobile: $13,101

Converted 1998 Ford Expedition: $1,700.

Damages for non-payment of taxes: $300,000.

Total: $522,980.

The $300,000 in damages for non-payment of taxes is explained as follows: Esplanade Enterprises, Inc. realizes that because Esplanade Enterprises, Inc. did not pay $1,284,447 in taxes it had cash to pay other debts, but, if the non-payment of taxes had not been concealed as part of Mr. Horne's representations as to the financial condition of Esplanade Enterprises, Inc. Mr. Miceli would have made efforts to sell Esplanade Enterprises, Inc.'s assets, or to restructure its business by decreasing Mr. Horne's salary, eliminating some staff positions, terminating inefficient business pursuits, better managing cash flow, promoting profitable business pursuits, and better scheduling drivers. Mr. Miceli is sure that he would have been able to save at least $300,000 from these efforts instead of having the tax debt accumulate to $1,284,447.

Mr. Miceli seeks damages of $261,490. He is a 50% owner of the stock of Esplanade Enterprises, Inc. The value of his 50% interest in the corporation has decreased by $261,490 (50% the $522,980 damages claimed by Esplanade Enterprises, Inc.) To make sure that Mr. Horne does not have to pay damages twice, Mr. Miceli would give him a $1.00 credit on any damages awarded him for each $2.00 in damages that he paid to Esplanade Enterprises, Inc.

RAYMOND L. SANDELMAN
ATTORNEY AT LAW
196 COHASSET ROAD, SUITE 225, CHICO, CA 95926-2284
(530) 343-5090 / (530) 343-5091 (FAX)

PLAINTIFFS' TRIAL BRIEF

Dated: January 19, 2016

_____
Raymond L. Sandelman
Attorney for Esplanade Enterprises, Inc. and
Joseph Miceli

*m:\work\client directories\esplanade enterprises, inc 1552\trialbrf 112.docx*

PLAINTIFFS' TRIAL BRIEF