1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:                                    ) Case No. 14-30124-B-7
                                          )
STEVEN J. HORNE,                          ) Adversary No. 15-2002
                                          )
                                          )
                 Debtor(s).               )
_____)
                                          )
ESPLANADE ENTERPRISES, INC.,              )
and JOSEPH MICELI,                        )
                                          )
                                          )
                 Plaintiff(s),            )
                                          )
v.                                        )
                                          )
STEVEN J. HORNE,                          )
                                          )
                 Defendant(s).            )
_____)



FILED

MAR 2 8 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**MEMORANDUM DECISION AFTER TRIAL**

## Introduction

This is an adversary proceeding to liquidate alleged debts and, to the extent liquidated, except those debts from discharge. The plaintiffs are Esplanade Enterprises, Inc., and Joseph Miceli. The defendant is Steven J. Horne.

The complaint was filed on January 5, 2015. It alleges three claims for relief: (1) an embezzlement/larceny claim under 11 U.S.C. § 523(a)(4) in the First Claim for Relief; (2) a willful and malicious conversion claim under 11 U.S.C. § 523(a)(6) in the Second Claim for Relief; and (3) a fraudulent misrepresentation claim under 11 U.S.C. § 523(a)(2)(A) in the Third Claim for Relief. There is no proof of service of the summons and complaint filed on the docket. Nevertheless, Horne

answered the complaint on February 2, 2015.

A trial in this matter was held on February 22, 2016. Raymond L. Sandelman, Esq., appeared for Esplanade and Miceli. Horne appeared pro se.

The parties stipulated to undisputed facts in a Joint Pretrial Statement of Undisputed Facts filed on October 28, 2015, as docket no. 24.  Those undisputed facts are all deemed admitted and they are incorporated by this reference.  The court also takes judicial notice of the docket in this adversary proceeding and in the underlying chapter 7 case filed on October 9, 2014, as Case No. 14-30124.

Esplanade and Miceli submitted direct testimony declarations of the following witnesses who also testified at trial consistent with their declarations: (1) Linda Harrington; (2) Vicky Perryman; and (3) Joseph Miceli.  Each witness testified without objection.  Horne did not object to those witnesses' direct testimony declarations or the exhibits submitted with each witnesses' declaration.  The exhibits were all admitted.

Horne also submitted his own direct testimony declaration and exhibits with the declaration.  Esplanade and Miceli made numerous objections to both the direct testimony declaration and the exhibits.  The court sustained and overruled those objections as stated on the record in open court.  The court's rulings on those objections are incorporated by this reference.

The court has considered the documents admitted into evidence.  The court also heard and considered testimony of witnesses, including Horne on his own behalf.  The court now

- 2 -

enters findings of fact and conclusions of law pursuant to
Federal Rule of Civil Procedure 52(a) made applicable in this
adversary proceeding by Federal Rule of Bankruptcy Procedure
7052.

**Jurisdiction and Venue**

Federal subject-matter jurisdiction is founded on 28 U.S.C.
§ 1334.  This matter is a core proceeding that a bankruptcy judge
may hear and determine.  See 28 U.S.C. §§ 157(b)(2)(A), (I), and
(O).  To the extent it may ever be determined to be a matter that
a bankruptcy judge may not hear and determine without consent,
the parties nevertheless consent to such determination by a
bankruptcy judge.  See 28 U.S.C. § 157(c)(2).  Venue is proper
under 28 U.S.C. § 1409.

**Findings of Fact**

Esplanade is a California corporation.  It was formed in
2004.  Under its fictitious business name Merit Medi-Trans,
Esplanade operates vans that transport patients on a non-
emergency basis.  Miceli is the chief executive officer and
director of Esplanade.  He has held those titles since April 9,
2004.

Horne is the debtor in the underlying chapter 7 case.  Horne
served as Esplanade's vice-president and secretary from April 9,
2004, through April 12, 2013, when he resigned.  Horne was
responsible for Esplanade's financial matters, including its
books and records.  Horne had access to Esplanade's bank accounts

and he was authorized to sign checks on Esplanade's behalf.

From March of 2008 through approximately January 2013, Miceli relied on Horne to manage Esplanade's affairs, including its finances and financial affairs.  Miceli and Horne had regular meetings and telephone conversations concerning Esplanade's financial condition and affairs.  During these meetings and conversations, Horne told Miceli that all Esplanade's bills were being paid and there were no financial issues facing Esplanade that Miceli needed concern himself with.  Horne made these statements and representations about Esplanade's financial condition to Miceli in his capacity as an officer and director of the corporation.

Horne's statements about Esplanade's financial condition to Miceli were not true and Horne knew they were not true when he made those statements to Miceli.  Horne knew that Esplanade was insolvent.  He also knew that Esplanade failed to retain deductions withheld from employee paychecks for corporate federal tax and state disability obligations in trust for the benefit of the IRS and California Employment Development Department.  Horne knew that caused Esplanade to incur federal tax liability in the amount of $93,668.05, which ultimately grew to $1,269,989, and state disability liability of $15,250.

Miceli relied on Horne's false representations about Esplanade's financial condition to retain Horne in a position of trust and in operational control of Esplanade, and to continue to provide Horne with access to Esplanade's finances and accounts. Horne knew this because during a meeting with Miceli on January

- 4 -

31, 2013, Horne told Miceli he (Horne) betrayed his (Miceli's) trust.  Horne made this statement in the context of an admission to the unauthorized use of Esplanade's monies to pay personal creditors and expenses.  During this meeting, Horne also gave Miceli a folder that contained a printout of Esplanade's Quickbooks accounts.  The printout reflected total disbursements of $294,614.32 Horne made to himself and his personal creditors.  Horne told Miceli he did not realize how much he took from Esplanade and that the situation got out of control.  Horne did not challenge or contravene this evidence, and he offered no explanation at all for his admissions to Miceli.

Stipulated facts submitted by the parties include Horne's admission that he disbursed $284,340 of Esplanade's monies from the corporation's accounts to pay himself and his personal creditors.  Of that amount, Miceli explained that $40,250 was allocated to the repayment of debt, with interest, that Esplanade owed Horne in the form of an $88,500 loan Horne made to Esplanade on or about August 31, 2004, leaving a subtotal balance of $244,090.  Miceli further explained that $98,620 of that subtotal balance is attributable to salary Horne should have received from December 2009 through April 2013.  Subtracting that $98,620 salary allocation from the $244,090 subtotal balance leaves a net balance of distributions of Esplanade's funds that Horne made to himself and to his personal creditors of $145,470.

The distributions that Horne made from Esplanade's funds to pay himself and his personal creditors were not authorized by Esplanade, its board, or its shareholders.  The $145,470 was not

- 5 -

a repayment of debt that Esplanade owed Horne because all debt
that Esplanade owed Horne in the form of Horne's loan to
Esplanade was repaid to Horne with interest by November 2009.
And it was not salary or compensation in addition to salary.

The court is also not persuaded that the funds Horne took
from Esplanade to pay his personal expenses were authorized
"petty cash" distributions, as Horne suggested.  While there was
testimony that Esplanade kept petty cash available for purchases,
purchases from petty cash were generally limited to hundreds of
dollars and not hundreds of thousands of dollars.

The court also does not believe Horne's testimony that
distributions to pay his personal expenses and his creditors were
loans to him from Esplanade.  Although there were undocumented
loans to Esplanade by third-parties, there is no evidence or
testimony that there were any undocumented loans from Esplanade
to an officer or director of the corporation.  Miceli did not
approve any such loans.  Moreover, any loans from Esplanade to
Horne as an officer and director of the corporation without
documentation and without shareholder approval would have been
illegal under California law.  Such loans also would have
amounted to a violation of Horne's fiduciary duty as an officer
and director of the corporation.

In addition to the $145,470 of unauthorized distributions of
Esplanade's monies from its accounts to pay personal expenses and
creditors, the court is persuaded that Horne also misappropriated
$62,709 in cash proceeds that Esplanade received from patients
who paid for services by cash.  Linda Harrington testified that

she received this cash, accounted for it according to long-standing company procedure, placed it in bags to be deposited in Esplanade's bank accounts, and gave the bags of cash to Horne for deposit into corporate bank accounts.  She also testified that she knew of no impropriety by any employee of the bank where these cash deposits were to be made.  The court believes Ms. Harrington and finds her testimony credible.  There are no records of these cash deposits ever being made into Esplanade's bank accounts and Horne offered no explanation for the disappearance of the cash he was given to deposit.  The court is persuaded that Horne misappropriated this cash for personal use in the amount of $62,709.

Horne is no longer present on the Esplanade premises and he no longer has any management or operational role or control in corporate operations.  Despite this, Horne has retained two vehicles that belong to Esplanade and are corporate property. One is a 2009 Chrysler 300 valued at $13,101.  Horne purchased this vehicle with corporate funds and without the consent of the corporation's board or shareholders.  He then had the vehicle titled in his name.  The other vehicle is a 1998 Ford Expedition the corporation owned, and which Horne took possession of during his employment with Esplanade.  The Ford Explorer is valued at $1,700.

Finally, Miceli testified that Horne's false statements and misrepresentations regarding Esplanade's finances and financial conditions caused him damages personally in the amount of $261,490 based on 50% reduction in the value of his stock.  Horne

- 7 -

based this amount on a 50% allocation of the total damages of
$522,980 sought by Esplanade.  That amount includes a $300,000
figure resulting from the non-payment of taxes and business
decisions Miceli would have made had he known Horne's
representations regarding Esplanade's finances and financial
condition were false.

**Conclusions of Law**

I.    First Claim for Relief – § 523(a)(4)

The First Claim for Relief alleges an embezzlement claim by
Esplanade against Horne under § 523(a)(4).  Esplanade seeks
damages on this claim in the amount of $208,179 and a judgment
that the debt arising from the judgment is excepted from
discharge under § 523(a)(4).

Section 523(a)(4) states as follows:

(a) A discharge under section 727 . . . of this title
does not discharge an individual debtor from any debt —

. . . .

(4) for fraud or defalcation while acting in a
fiduciary capacity, embezzlement, or larceny[.]

11 U.S.C. § 523(a)(4).

Embezzlement in the context of nondischargeability requires
three elements: (1) property rightfully in the possession of a
nonowner; (2) nonowner's appropriation of the property to a use
other than that to which it was entrusted; and (3) circumstances
indicating fraud.  Transam. Comm'l Fin. Corp. v. Littleton (In re
Littleton), 942 F.2d 551, 555 (9th Cir. 1991).  Unlike the breach
of fiduciary duty action, embezzlement under § 523(a)(4) does not

- 8 -

require the presence of a fiduciary relationship or an express
trust relationship.  Id. (citations omitted).

In his capacity as an officer and director of Esplanade,
Horne was entrusted with responsibility for corporate finances
and financial affairs.  In that capacity, he had access to
Esplanade's bank accounts and the corporate funds in those
accounts.  He also had the authority to sign checks and pay the
expenses on behalf of the corporation.

Horne has admitted to the use of Esplanade's monies to pay
personal expenses and creditors.  Horne used a net total of
$145,470 for those purposes.  The court is persuaded that Horne's
use of corporate monies to pay personal expenses and creditors
was not authorized or approved by Esplanade, its board, or its
shareholders.  The court is also persuaded that Horne was given
$62,709 in cash receipts to deposit into Esplanade's bank
accounts which were never deposited.  Horne offered no
explanation for his failure to deposit these funds in corporate
bank accounts or for their disappearance.  Accordingly, Esplanade
has established that Horne was entrusted with corporate funds
totaling $208,179 which he used for purposes other than which
those funds were intended and without appropriate authorization.

Esplanade has also established circumstances indicating
fraud.  Horne made statements to Miceli that were false and which
Horne knew were false when they were made.  Horne told Miceli
there were no issues with - and there was nothing to worry about
concerning - Esplanade's finances and financial condition.  Horne
knew these statements were false because he knew the corporation

- 9 -

was insolvent and had incurred significant liability to federal and state governmental authorities. He also knew that he was using corporate monies to pay personal expenses and creditors without authorization by Esplanade.

Miceli relied on Horne's false statements and misrepresentations about Esplanade's finances and financial condition, and the use of corporate funds, by entrusting Horne with corporate finances and operations. With Esplanade's financial condition concealed, Miceli's reliance on Horne's statements were justified. In fact, had Miceli known of Esplanade's true financial condition and the status of its finances, he would have restructured the business, terminated employees, or sold the company.

Horne also made the false statements and misrepresentations about Esplanade's finances and financial condition with the intent to deceive Miceli. Based on Horne's statement to Miceli on January 31, 2013, that Horne betrayed Miceli's trust by taking funds from Esplanade to pay his personal expenses and creditors, Horne knew that Miceli entrusted him with corporate operations and finances. The court is persuaded that in order to retain that trust, and thereby remain in control of Esplanade's finances, Horne knew he had to continue to deceive Miceli about Esplanade's true financial condition and liabilities. This is apparent from Horne's continued and repeated unauthorized use of Esplanade's monies to pay his personal expenses and creditors between 2008 and 2013.

In short, the court is persuaded that Esplanade has

- 10 -

presented evidence sufficient to sustain an embezzlement claim
against Horne under § 523(a)(4) and that Esplanade was damaged by
that embezzlement.  Therefore, judgment on the First Claim for
Relief will be entered in favor Esplanade and against Horne in
the amount of $208,179 and that judgment will be excepted from
discharge under § 523(a)(4).

II.  Second Claim for Relief - § 523(a)(6)

The Second Claim for Relief purports to allege a claim for
willful conversion under § 523(a)(6).  It is a claim by Esplanade
against Horne for conversion of two vehicles - a 2009 Chrysler
300 and a 1998 Ford Explorer.  Esplanade seeks damages on this
claim in the amount of $14,801, as the total value of both
vehicles, and a judgment that the debt arising from the judgment
is excepted from discharge under § 523(a)(6).

Section 523(a)(6) states as follows:

(a) A discharge under section 727 . . . of this title
does not discharge an individual debtor from any debt —

. . . .

(6) for willful and malicious injury by the debtor to
another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6).

Federal bankruptcy law governs the dischargeability of a
claim under § 523(a)(6); however, state law determines whether an
act falls within the tort of conversion.  Lockerby v. Sierra, 535
F.3d 1038, 1041-42 (9th Cir. 2008) (citations omitted); Del Bino
v. Bailey (In re Bailey), 197 F.3d 997, 1000 (9th Cir. 1999).
Under California law, conversion is "'any act of dominion

- 11 -

wrongfully asserted over another's personal property in denial of
or inconsistent with his rights therein.  It is not necessary
that there be a manual taking of the property; it is only
necessary to show an assumption of control or ownership over the
property, or that the alleged converter has applied the property
to his own use.'"  Bailey, 197 F.3d at 1000 (quoting Igauye v.
Howard, 114 Cal. App. 2d 122, 126 (1952)).

The Chrysler 300 and the Ford Explorer belong to Esplanade.
Although Horne managed to obtain title to the Chrysler 300 in his
name, he purchased that vehicle with corporate funds.  That makes
the Chrysler 300 a corporate asset.  Horne also took possession
of the Ford Explorer owned by Esplanade following his employment
with Esplanade.

Horne resigned from Esplanade on April 12, 2013.  Although
Horne is no longer employed by Esplanade and he has no management
of or operational control over the corporation, he has retained
both vehicles which he has refused to return to Esplanade despite
Esplanade's demand for return.  Horne's actions amount to an
unauthorized retention and use of corporate property and that
constitutes conversion under California law.  But that does not
end the § 523(a)(6) inquiry.

The United States Supreme Court in Kawaauhau v. Geiger (In
re Geiger), 523 U.S. 57 (1998), made clear that for § 523(a)(6)
to apply the actor must intend the consequences of the act not
simply the act itself.  Id. at 60.  Both willfulness and
maliciousness must be proven to block discharge under section
523(a)(6).  Id.  That applies equally to a debt based on

- 12 -

conversion in order for a debt arising from conversion to be

exempted from discharge under § 523(a)(6). <u>Davis v. Aetna</u>

<u>Acceptance Co.</u>, 293 U.S. 328, 331-32 (1934); <u>Peklar v. Ikerd (In</u>

<u>re Peklar)</u>, 260 F.3d 1035, 1039 (9th Cir. 2001); <u>see also</u> <u>Thiara</u>

<u>v. Spycher Bros. (In re Thiara)</u>, 285 B.R. 420, 429 (9th Cir. BAP

2002).   Indeed, as the bankruptcy appellate panel recently

summarized in <u>Zeeb v. Farrah (In re Zeeb)</u>, 2015 WL 6720934(9th

Cir. BAP 2015), conversion under California law does not

encompass the willful and malicious elements required by

§ 523(a)(6):

> Under California law, conversion is the wrongful
> exercise of dominion over the property of another[.]

> The three elements of conversion under California law
> do not include the elements of the 'willful' and
> 'malicious' prongs under § 523(a)(6). Conversion under
> California law does not require a showing that the
> defendant subjectively intended to injure the plaintiff
> or subjectively knew that the defendant's conduct was
> substantially certain to injure the plaintiff.

> As we have previously held, conversion establishes the
> debtor's wrongful exercise of dominion over the
> personal property of another, but it does not
> necessarily decide the type of wrongful intent on the
> part of the debtor that is necessary for the damages to
> be a nondischargeable debt under § 523(a)(6).

> Similarly, conversion under California law does not
> necessarily implicate 'maliciousness.' Maliciousness
> requires (1) a wrongful act, (2) done intentionally,
> (3) which necessarily causes injury, and (4) is done
> without just cause or excuse.  While one of the
> elements of conversion encompasses a 'wrongful act,'
> the other elements do not satisfy the remaining
> maliciousness prongs.  We thus conclude that the
> conversion, in and of itself, is not necessarily
> 'malicious.'

<u>Id</u>. at *5-6 (internal citations and quotations omitted).

i.   <u>Willful Injury</u>

In the Ninth Circuit, "§ 523(a)(6)'s willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." <u>Ormsby v. First Am. Title Co. (In re Ormsby)</u>, 591 F.3d 1199, 1206 (9th Cir. 2010); <u>Carrillo v. Su (In re Su)</u>, 290 F.3d 1140, 1142 (9th Cir. 2002).  A debtor is charged with the knowledge of the natural consequences of his actions. <u>Cablevision Sys. Corp. v. Cohen (In re Cohen)</u>, 121 B.R. 267, 271 (Bankr. E.D. N.Y. 1990); <u>see also Su</u>, 290 F.3d at 1146 at n.6 ("In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.").

The court concludes that Horne willfully converted the Chrysler 300, but not the Ford Explorer.  Esplanade has not carried its burden of proving that Horne subjectively intended to injure - or that he knew injury to the corporation was substantially certain to occur - by retention of the Ford Explorer.  With respect to that vehicle, all that Esplanade has established is that Horne took possession of the vehicle while employed by the corporation and refused to return it when his employment ended.  Without more, the court is not persuaded that Horne's conversion of the Ford Explorer is willful.

On the other hand, the court is persuaded that conversion of the Chrysler 300 is willful.  Horne knew that he used corporate

1  funds to purchase the Chrysler 300 and he knew that he titled
2  that vehicle in his name rather than in the name of the
3  corporation.  Based on those acts and the unauthorized retention
4  of the vehicle for personal use and without payment, the court
5  concludes that Horne knew a financial loss to the corporation was
6  substantially certain to occur.  And that means with respect to
7  the Chrysler 300, Horne's conversion of the vehicle inflicted
8  injury on Esplanade intentionally.
9      ii.   Malicious Injury
10     The court is also persuaded that Horne's conversion of the
11 Chrysler 300 was malicious.  "A malicious injury involves (1) a
12 wrongful act, (2) done intentionally, (3) which necessarily
13 causes injury, and (4) is done without just cause or excuse."
14 Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th
15 Cir. 2001) (internal citations omitted).  Malice may be inferred
16 from the nature of the wrongful act.  See Ormsby, 591 F.3d at
17 1207 (citation omitted).  However, to infer malice it must first
18 be established that the conversion was willful.  See Thiara, 285
19 B.R. at 434.  The court has determined that the conversion of the
20 Chrysler 300 was willful.
21
22     The first three elements of the malicious inquiry have been
23 established.  The unauthorized use of corporate funds to purchase
24 the Chrysler 300, titling that vehicle individually rather than
25 in the name of the corporation, and the subsequent unauthorized
26 retention and personal use of the vehicle without repayment to
27 the corporation are wrongful acts done intentionally.  Each of
28 those caused Esplanade economic injury in the loss of funds used

- 15 -

to purchase the vehicle, and the loss of the vehicle itself. And each were done without any explanation of just cause or excuse by Horne. Regarding the latter, the court acknowledges Horne's testimony that the corporation permitted purchases without prior authorization. However, as noted above, those purchases were limited to de minimus items from petty cash.

In short, the court concludes that, as to the Chrysler 300, Horne's conversion of the vehicle meets both the willful and malicious prongs of section § 523(a)(6). As to the Ford Explorer, it meets neither. Therefore, judgment on the Second Claim for Relief will be entered in favor Esplanade and against Horne in the amount of $13,101 and that judgment will be excepted from discharge under § 523(a)(6).

III.  Third Claim for Relief - § 523(a)(2)(A)

The Third Claim for Relief alleges a claim by Miceli against Horne under § 523(a)(2)(A). Miceli appears to seeks damages on this claim in the amount of $300,000 for the non-payment of taxes which prevented Miceli from taking actions he claims would have avoided IRS tax liability and $261,490 attributable to a 50% reduction in the value of his corporate stock. Both claims arise out of the false statements and misrepresentations that Horne made to Miceli regarding Esplanade's finances and financial condition. Regardless of the damages sought, Miceli has failed to prove an actionable
§ 523(a)(2)(A) claim.

- 16 -

Section 523(a)(2)(A) states as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt —

. . . .

(2) for money; property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by — (A) false pretenses, a false representation, or actual fraud, **other than a statement respecting the debtor's or an insider's financial condition;**

11 U.S.C. § 523(a)(2)(A) (emphasis added).

The elements of fraud under § 523(a)(2)(A) are: (1) the debtor made a representation; (2) the debtor knew at the time the representation was made that it was false; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained damage as the proximate result of the representation. In re Ettel, 188 F.3d 1141, 1144 (9th Cir. 1999) (citation omitted); Apte v. Japra (In re Apte), 96 F.3d 1319 (9th Cir. 1996).

As discussed above, the court is persuaded that Esplanade has established fraud. Horne made false statements to Miceli about Esplanade's finances and financial condition that Horne knew were false, those false statements were made with the requisite intent to deceive, and Horne justifiably relied on those false statements. However, based on the evidence presented at trial, Horne's false statements were limited to the finances and financial condition of Esplanade. With nothing more, there can be no § 523(a)(2)(A) claim. See Barnes v. Belice (In re Belice), 461 B.R. 564, 577-78 (9th Cir. BAP 2011).

- 17 -

Horne was an officer and director of Esplanade and he made false statements about Esplanade's finances and financial condition to Miceli in that capacity.  That makes the corporation an "insider," as that term is used in § 523(a)(2)(A) and defined in § 101(31)(A)(iv).[1]  And because Horne's false statements and misrepresentations to Miceli were limited to Esplanade's financial condition, that means all that Miceli has proven are false statements and misrepresentations "respecting . . . an insider's financial condition."  Stated another way, the content of Horne's false statements and misrepresentations do not support an actionable § 523(a)(2)(A) claim, which means any damages resulting from those false representations are dischargeable in Horne's chapter 7 case.

Therefore, on the Third Claim for Relief, judgment will be entered in favor of Horne and against Miceli with Miceli taking nothing on this § 523(a)(2)(A) claim.

**Conclusion**

Judgment shall be entered as stated hereinabove.

A separate judgment shall issue.

Dated:  March 28, 2016.


UNITED STATES BANKRUPTCY JUDGE

---

[1]An "insider" is defined as follows: "The term 'insider' includes – if the debtor is an individual – corporation of which the debtor is a director, officer, or person in control[.]" 11 U.S.C. § 101(31)(A)(iv).

- 18 -

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Raymond L. Sandelman
196 Cohasset Road, Suite 225
Chico CA 95926

Thomas G. Mouzes
555 Capitol Mall Suite 1500
Sacramento CA 95814

Mark Gorton
555 Capitol Mall Suite 1500
Sacramento CA 95814

Steven J. Horne
P. O. Box 195
Chico CA 95927